UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA ALICE KUNZE,

                           Plaintiff,

v.                                                                                  1:18-CV-1009
                                                                                        (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     MARY ELLEN GILL, ESQ.
  Counsel for Plaintiff                                 KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                  BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   FRANCIS TANKARD, ESQ.
  Counsel for Defendant                             MEGHAN MCEVOY, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 17.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1963. (T. 324.) She completed high school. (T. 495.) Generally, Plaintiff's alleged disability consists of fibromyalgia, osteoarthritis, high blood pressure, "possible MS," depression, hyperthyroidism, and vitamin B12 deficiency. (T. 494, 544.) Her alleged disability onset date is December 6, 2012. (T. 326.) Her date last insured is December 31, 2014. (*Id*.) Plaintiff's past relevant work consists of mental health tech/aide. (T. 495.)

### B. Procedural History

On April 3, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 324.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 5, 2016 and again on December 7, 2015, Plaintiff appeared before the ALJ, Lynette Gohr. (T. 230-244, 245-283.) On March 2, 2017, ALJ Gohr issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 207-229.) On July 17, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 212-223.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since December 6, 2012. (T. 212.) Second, the ALJ found Plaintiff had

2

the severe impairments of: multiple sclerosis, lumbar degenerative disc disease and spondylosis, cervical degenerative disc disease, migraine headaches, osteoarthritis, major depressive disorder, generalized anxiety disorder, portal vein thrombosis, and pancreatic mass. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 213.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in [20 C.F.R. §§404.1567(b) and 416.967(b)] except [Plaintiff] can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch and crawl. In addition, she can ambulate with the use of a cane one day per week. Moreover, she can sit and stand at will while remaining on task. Lastly, she is limited to simple routine tasks, simple work-related decisions and occasional interaction with supervisors, coworkers and the public.

(T. 215.)[1] Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 221-223.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of her motion for judgment on the pleadings and reply. First, Plaintiff argues the ALJ committed legal error in formulating her physical RFC determination because the RFC was not

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

supported by "any medical opinion evidence from an acceptable medical source." (Dkt No. 8 at 10-12.) Second, Plaintiff argues the ALJ erred in weighing the opinion of Plaintiff's treating physician assistant ("PA"), Julia Szafrinski, because the ALJ cherry picked the opinion, the ALJ's analysis of the opinion was conclusory and insufficient, and the ALJ failed to consider the regulatory factors. (*Id*. at 12-14.) Third, Plaintiff argues the ALJ erred in formulating her mental RFC determination, because she afforded more weight to a non-examining source over an examining source. (*Id*. at 15.) Fourth, Plaintiff argues the ALJ misconstrued the record in concluding the psychiatric consultative examiner's opinion was inconsistent with the record. (*Id*. at 15-16.) Fifth, in her reply, Plaintiff raises a new argument. Plaintiff argues the ALJ erred in her assessment of the State agency non-examining medical consultant, Thomas Bixler, M.D., in formulating her physical RFC. (Dkt. No. 16.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues substantial evidence supported the ALJ's evaluation of Plaintiff's subjective complaints, including evaluation of the medical opinion evidence. (Dkt. No. 15 at 15-26.) Second, Defendant argues substantial evidence supported the ALJ's RFC determination and finding that Plaintiff could perform other work. (*Id*. at 26-29.) Defendant filed a sur-reply addressing Plaintiff's new argument. Third, Defendant argues the ALJ properly assessed Dr. Bixler's opinion. (Dkt. No. 19 at 1-5.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1)[2]. The ALJ is responsible for

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

Plaintiff's initial argument, that the ALJ's physical RFC determination was the product of legal error because it was not supported by a medical opinion, is without merit. (Dkt. No. 8 at 10-12.) First, an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Here, there was sufficient evidence in the record for the ALJ to assess Plaintiff's RFC. The record contained numerous treatment records, consultative examinations, and hearing testimony.

7

Second, as Plaintiff concedes in her reply, the ALJ relied on the opinion of non-examining State agency medical consultant, Dr. Bixler in formulating her physical RFC determination. Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

Plaintiff concedes the ALJ's RFC determination was supported by Dr. Bixler's opinion; however, Plaintiff asserts the ALJ failed to reconcile her RFC determination, that Plaintiff had no restrictions on handling, with Dr. Bixler's opinion Plaintiff was limited to frequent handling with the bilateral hands. (Dkt. No. 16 at 1.) In assessing Plaintiff's physical RFC, the ALJ afforded the opinion of Dr. Bixler "significant weight." (T. 220.) Dr. Bixler opined Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. (T. 333-334.) He opined Plaintiff could sit, stand and/or walk for six hours each in an eight-hour workday. (T. 334.) Dr. Bixler opined Plaintiff could occasionally push and pull with her upper extremities due to wrist pain; frequently climb ramps, stairs, ladders, ropes, and scaffolds and crawl; and had no limitations in balancing, stooping, kneeling and crouching. (*Id*.) He opined Plaintiff had no limitations in her ability to reach, feel, and finger. (T. 334-335.) Dr. Bixler opined Plaintiff was limited to "frequent" handling due to pain with range of motion in her wrists. (T. 335.)

To be sure, although the ALJ afforded Dr. Bixler's opinion "significant" weight, the ALJ's RFC determination did not specifically contain the doctor's additional manipulative limitations. (T. 215, 220.) First, the ALJ's reasoning for not adopting additional manipulative limitations can be gleaned from the record. Second, any error was

8

harmless because there would still be a significant number of jobs in the national economy Plaintiff could perform even if she was limited to frequent handling.

As outlined by Defendant, the ALJ's reasoning for not adopting Dr. Bixler's additional manipulative limitations can be gleaned from the decision. (Dkt. No. 19 at 3-5.) "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)). Dr. Bixler stated he based his pushing/pulling and handling limitations on the examination of consultative examiner, Rick Limbert, D.O., during which Plaintiff showed pain with wrist range of motion. (T. 334-336.)

The ALJ discussed Dr. Limbert's examination and opinion, and her discussion of the doctor's opinion and other evidence in the record, indicated her reasoning for not adopting additional manipulative limitations in her RFC. The ALJ reasoned despite wrist tenderness, Dr. Limbert opined Plaintiff could lift, carry, and handle light objects and perform fine motor skills. (T. 217, 642.) The ALJ noted Dr. Limbert observed Plaintiff had full bilateral extremity strength. (T. 217, 641.) Indeed, although Dr. Limbert found Plaintiff had wrist pain with motion, he found Plaintiff still had full range of motion in her wrists, noted her pain was mild, noted her joints were not inflamed, and observed she had full wrist flexion, extension, and hand grip. (T. 641-642, 645.)

In addition, the ALJ discussed other objective examinations during which Plaintiff was observed to have equal and full bilateral upper extremity strength, 4.5 out of 5 grip strength, and intact sensation. (T. 218-219.) The ALJ also relied on Plaintiff's

9

testimony regarding her daily activities, such as washing dishes, cleaning, preparing meals, shopping, and dressing. (T. 214-215.) Therefore, the ALJ's reasoning for not adopting additional manipulative limitations in her physical RFC determination can be gleaned from the her discussion of the medical opinion evidence, objective evidence, and Plaintiff's activities.

Further, failure to include additional manipulative limitations was harmless error. At the hearing, the ALJ posed an alternative hypothetical to the vocational expert. The hypothetical mirrored the ALJ's ultimate RFC determination, but included a limitation to frequent fine and gross manipulation with the bilateral upper extremities. (T. 242-243.) The VE testified that Plaintiff could still perform the occupation of folder (DOT 369.687-018). (T. 238, 243.) The VE testified there were 9,000 folder jobs in the national economy. (T. 238-239); see Sanchez v. Berryhill, 336 F. Supp. 3d 174, 178 (W.D.N.Y. 2018) (finding 9,046 jobs to be significant under the Act and by other courts). Therefore, had the ALJ including in her RFC determination a limitation to "frequent" handling, a significant number of jobs would still exist that Plaintiff could perform.

The ALJ's RFC further did not specifically account for Dr. Bixler's opinion Plaintiff could occasionally push/pull. (T. 215, 334.) The ability to occasionally push and pull is consistent with an RFC for unskilled light work. See Cross v. Astrue, No. 08-CV-0425, 2009 WL 3790177, at *5 (N.D.N.Y. Nov. 12, 2009) ("While the ALJ did not present in his hypothetical to the vocational expert specific reference to the push-pull limitation, those exertional limitations were unlikely to impact the work available to Plaintiff in the unskilled 'light work' category."); see Rodriguez v. Colvin, No. 15-CV-8390, 2016 WL 1178780, at *13 (S.D.N.Y. Mar. 25, 2016) (RFC limiting plaintiff to occasionally push/pull

consistent with light work). Therefore, the ALJ's RFC for light work with additional limitations was not inconsistent with Dr. Bixler's push/pull limitations.

Next, Plaintiff argues the ALJ erred in her evaluation of PA Szafranski opinion because the ALJ impermissibly cherry picked the opinion and her overall assessment was "conclusory and insufficient." (Dkt. No. 8 at 12-13.)

On November 4, 2016, PA Szafranski completed a "Physical Treating Medical Source Statement" form. (T. 1056-1060.) PA Szafranski indicated Plaintiff could sit for ten minutes at one time and stand for five minutes at one time. (T. 1057.) When asked how long Plaintiff could sit and stand/walk total in an 8-hour workday, PA Szafranski checked "less than 2 hours." (T. 1058.) She also checked "about 2 hours" when asked how long Plaintiff could sit total in an 8-hour work day. (*Id*.) She indicated Plaintiff needed to change positions at will. (*Id*.) PA Szafranski opined Plaintiff needed to elevate her feet above her heart for one to two hours a day if she had a sedentary job. (*Id*.) She opined Plaintiff could frequently lift and carry less than ten pounds; occasionally lift and carry up to ten to twenty pounds; and never lift and carry 50 pounds. (*Id*.) PA Szafranski opined Plaintiff had no limitation in her ability to look down/up, and turn her head. (T. 1059.) She opined Plaintiff could rarely: twist, stoop, crouch/squat and climb stairs. (*Id*.) She opined Plaintiff could never climb ladders. (*Id*.) PA Szafranki declined to complete the section of the form regarding any limitations in the use of her hands/fingers/arms and wrote "unable to determine." (*Id*.) When asked how many days Plaintiff would, on average, be absent per month due to impairments or treatment, PA Szafranki checked "about two days per month."

After her answer she wrote "unknown" and that her answer was an "estimate" and deferred a disability decision to Plaintiff's specialists. (*Id*.)

The ALJ afforded PA Szafranki's opinion "partial" weight. (T. 219.) The ALJ afforded "significant" weight to the opinion Plaintiff could lift/carry twenty pounds and "little" weight to the remainder of the opinion. (*Id*.) The ALJ reasoned the limitations were "inconsistent with the record as a whole and undercut by the notion that deferred an ultimate disability determination to [Plaintiff's] specialists." (*Id*.)

Here, the ALJ properly assessed PA Szafranki's opinion. A review of the record, and the ALJ's decision, does not support Plaintiff's assertion that the ALJ's weighing of the opinion was an "obvious picking and choosing" of evidence to support her RFC. (Dkt. No. 8 at 12.) Further, although the ALJ did not elaborate in her assessment of the opinion what specific evidence she found "inconsistent" with various limitations, the ALJ's rationale can be gleaned from her decision. *See Mongeur,* 722 F.2d at 1040 (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

The limitations provided in PA Szafranki's opinion were inconsistent with objective medical evidence in the record as well as other medical opinion evidence. In her decision the ALJ outlined objective medical findings such as physical examinations during which Plaintiff demonstrated full strength in her

12

upper extremities, 4.5/5 strength in her right lower extremity and 4.2/5 strength in her left lower extremity, normal sensory examination, and a slow and unassisted gait. (T. 218, 873, 884.) The ALJ also relied on physical examination results provided by PA Szafranki which indicated normal neurological findings, full strength in the upper and lower extremities, and stable ambulation. (T. 219.)

Further, the ALJ relied on the medical opinion evidence provided by Dr. Bixler, as outlined above, and Dr. Limbert, in formulating her physical RFC determination. Dr. Limbert examined Plaintiff in June of 2014. (T. 639.) He did not provide a function-by-function assessment; however, he stated Plaintiff was "able to lift, carry and handle light objects." (T. 642.) He further observed Plaintiff was able to perform fine motor skills. (*Id*.) Therefore, the ALJ's reasoning for affording the majority of PA Szafranki's opinion little weight can be readily gleaned from the ALJ's decision.

Lastly, Plaintiff asserts the ALJ committed legal error in affording more weight to a non-examining State agency medical consultant over examining consultative examiner in formulating her mental RFC. (Dkt. No. 8 at 15-16.) Here, the ALJ did not commit *per se* legal error in affording more weight to a non-examining medical expert over the opinion of an examining source. Further, as outlined below, substantial evidence supported the ALJ's weight determinations and ultimate mental RFC determination.

Consultative examiner, Timothy Foster, Ph.D., examined Plaintiff in 2014. (T. 634-637.) Dr. Foster opined Plaintiff could:

> understand, remember and carry out simple instructions. Her attention and memory may be below the level in which her function would be acceptable

in a competitive work environment. Her social function is adequate except in a busy or crowded place.

(T. 637.) The ALJ acknowledged Dr. Foster examined Plaintiff; however, reasoned his opinion, that Plaintiff's attention and memory were unacceptable for a competitive work environment, was inconsistent with the record as a whole. (T. 217.) The ALJ specifically noted examinations by Plaintiff's treating source, Horacio Capote, M.D., and Plaintiff's activities of daily living. (T. 217, 219.)

Non-examining State agency medical consultants, Thomas Conger, Ph.D. and Candace Mihm, Ph.D., reviewed Plaintiff's record in 2014. Dr. Conger indicated Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (T. 316.) Dr. Mihm also found Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (T. 332.) The ALJ afforded their opinions "significant weight." (T. 220.)

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e). The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record. *Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016); *see Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016); *see*

14

*Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). Further, substantial evidence supported the ALJ's weight determinations. Therefore, the ALJ did not commit *per se* legal error in affording more weight to a non-examining source than an examining source.

Plaintiff asserts the ALJ erred in her determination that Dr. Foster's opinion was inconsistent with the record as a whole. (Dkt. No. 8 at 15.) Plaintiff argues evidence in the record of Plaintiff's complaints of memory and concentration issues supported Dr. Foster's opinion and the ALJ failed to consider those treatment notes in weighing the opinion. (*Id.*) Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, a review of the record and the ALJ's decision fails to support the notion that the ALJ misread, or selectively read, the record. Further, substantial evidence in the record supported the ALJ's determination to afford Dr. Foster's opinion little weight. The ALJ specifically cited other medical evidence, such as Dr. Capote's evaluation outlined herein, and Plaintiff's activities of daily living. Overall, the ALJ's mental RFC determination was supported by the medical opinions of Drs. Conger and Mihm, objective medical observations from Dr. Capote.

Therefore, for the reasons stated herein, the ALJ properly weighed the medical opinion evidence in the record and the ALJ's RFC determination was supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 18, 2019

*Bill Carter*

William B. Mitchell Carter
U.S. Magistrate Judge

16